# IN THE UNITED STATES DISTRICT COURT
# FOR THE MIDDLE DISTRICT OF NORTH CAROLINA

|  |  |  |
|---|---|---|
| ETVARD J. VARTANIAN, | ) |  |
|  | ) |  |
| Plaintiff, | ) |  |
|  | ) |  |
| v. | ) | 1:13CV293 |
|  | ) |  |
| CAROLYN W. COLVIN, | ) |  |
| Acting Commissioner of Social | ) |  |
| Security, | ) |  |
|  | ) |  |
| Defendant. | ) |  |

## MEMORANDUM OPINION AND RECOMMENDATION
## OF UNITED STATES MAGISTRATE JUDGE

Plaintiff, Etvard J. Vartanian, brought this action to obtain judicial review of a final decision of Defendant, the Commissioner of Social Security, denying an award of Disability Insurance Benefits ("DIB") under Title II of the Social Security Act (the "Act"). (Docket Entry 3.) The Court has before it the certified administrative record (cited herein as "Tr. __") and the parties have filed cross-motions for judgment (Docket Entries 10, 16). For the reasons that follow, the Court should enter judgment for Defendant.

## PROCEDURAL HISTORY

Plaintiff filed applications for DIB, alleging a disability onset date of December 31, 2008. (Tr. 142-45.) Upon denial of the applications initially and upon reconsideration (Tr. 50-99), Plaintiff requested and received a hearing de novo before an

Administrative Law Judge ("ALJ"), at which Plaintiff, his representative, and a vocational expert ("VE") appeared. (Tr. 28-48.) The ALJ then ruled Plaintiff not disabled under the Act. (Tr. 16-27.) The Appeals Council subsequently denied Plaintiff's request for review (Tr. 1-3), thereby making the ALJ's ruling the Commissioner's final decision for purposes of judicial review.

In rendering that disability determination, the ALJ made the following findings later adopted by the Commissioner:

> 1. [Plaintiff] meets the insured status requirements of the Social Security Act through March 31, 2014.
>
> 2. [Plaintiff] has not engaged in substantial gainful activity since December 31, 2008, the alleged onset date (20 CFR 404.1571 *et seq.*).
>
> . . .
>
> 3. [Plaintiff] has the following severe impairments: diabetes mellitus; borderline intellectual functioning; schizophrenia and depression (20 CFR 404.1520(c)).
>
> . . .
>
> 4. [Plaintiff] does not have an impairment or combination of impairments that meets or medically equals the severity of one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1 (20 CFR 404.1520(d), 404.1525, and 404.1526).
>
> . . .
>
> 5. . . . [Plaintiff] has the residual functional capacity to perform a full range of work at all exertional levels but with the following nonexertional limitations: he is limited to performing simple, repetitive routine tasks with no public contact or interaction. He should avoid concentrated exposure to environmental hazards such as dangerous machinery and heights.

(Tr. 21-24.)

The ALJ further found that Plaintiff could perform his past relevant work as a dishwasher/kitchen helper. (Tr. 27.) Accordingly, the ALJ ruled that Plaintiff did not suffer from a "disability" under the Act from the alleged onset date through the decision date. (Id.)

## DISCUSSION

Federal law "authorizes judicial review of the Social Security Commissioner's denial of social security benefits." Hines v. Barnhart, 453 F.3d 559, 561 (4th Cir. 2006). However, "the scope of [that] review . . . is extremely limited." Frady v. Harris, 646 F.2d 143, 144 (4th Cir. 1981). "The courts are not to try the case de novo." Oppenheim v. Finch, 495 F.2d 396, 397 (4th Cir. 1974). Instead, "a reviewing court must uphold the factual findings of the ALJ [underlying the denial of benefits] if they are supported by substantial evidence and were reached through application of the correct legal standard." Hines, 453 F.3d at 561 (internal brackets and quotation marks omitted).

"Substantial evidence means 'such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" Hunter v. Sullivan, 993 F.2d 31, 34 (4th Cir. 1992) (quoting Richardson v. Perales, 402 U.S. 389, 390 (1971)). "It consists of more than a mere scintilla of evidence but may be somewhat less than a preponderance." Mastro v. Apfel, 270 F.3d 171, 176 (4th

3

Cir. 2001) (internal citations and quotation marks omitted). "If there is evidence to justify a refusal to direct a verdict were the case before a jury, then there is substantial evidence." Hunter, 993 F.2d at 34 (internal quotation marks omitted).

"In reviewing for substantial evidence, the [C]ourt should not undertake to re-weigh conflicting evidence, make credibility determinations, or substitute its judgment for that of the [ALJ, as adopted by the Commissioner]." Mastro, 270 F.3d at 176 (internal brackets and quotation marks omitted). "Where conflicting evidence allows reasonable minds to differ as to whether a claimant is disabled, the responsibility for that decision falls on the [Commissioner] (or the ALJ)." Id. at 179 (internal quotation marks omitted). "The issue before [the Court], therefore, is not whether [the claimant] is disabled, but whether the ALJ's finding that [the claimant] is not disabled is supported by substantial evidence and was reached based upon a correct application of the relevant law." Craig v. Chater, 76 F.3d 585, 589 (4th Cir. 1996).

In confronting that issue, the Court must note that "[a] claimant for disability benefits bears the burden of proving a disability," Hall v. Harris, 658 F.2d 260, 264 (4th Cir. 1981), and that "disability" means the "'inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for

4

a continuous period of not less than 12 months.'" Id. (quoting 42 U.S.C. § 423(d)(1)(A)).[1] "To regularize the adjudicative process, the Social Security Administration has . . . promulgated . . . detailed regulations incorporating longstanding medical-vocational evaluation policies that take into account a claimant's age, education, and work experience in addition to [the claimant's] medical condition." Id. "These regulations establish a 'sequential evaluation process' to determine whether a claimant is disabled." Id. (internal citations omitted).

That sequential evaluation process ("SEP") has up to five steps: "The claimant (1) must not be engaged in 'substantial gainful activity,' *i.e.*, currently working; and (2) must have a 'severe' impairment that (3) meets or exceeds the 'listings' of specified impairments, or is otherwise incapacitating to the extent that the claimant does not possess the residual functional capacity to (4) perform [the claimant's] past work or (5) any other work." Albright v. Commissioner of Soc. Sec. Admin., 174 F.3d 473, 475 n.2 (4th Cir. 1999).[2] A finding against the claimant at any of several points along the SEP forecloses an award and ends the inquiry. For

---

[1] The Act "comprises two disability benefits programs. [DIB] . . . provides benefits to disabled persons who have contributed to the program while employed. The Supplemental Security Income Program (SSI) . . . provides benefits to indigent disabled persons. The statutory definitions and the regulations . . . for determining disability governing these two programs are, in all aspects relevant here, substantively identical." Craig, 76 F.3d at 589 n.1 (internal citations omitted).

[2] "Through the fourth step, the burden of production and proof is on the claimant. If the claimant reaches step five, the burden shifts to the [government] . . . ." Hunter, 993 F.2d at 35 (internal citations omitted).

example, "[t]he first step determines whether the claimant is engaged in 'substantial gainful activity.' If the claimant is working, benefits are denied. The second step determines if the claimant is 'severely' disabled. If not, benefits are denied." Bennett v. Sullivan, 917 F.2d 157, 159 (4th Cir. 1990).

On the other hand, if a claimant carries his or her burden at each of the first three steps, "the claimant is disabled." Mastro, 270 F.3d at 177. Alternatively, if a claimant clears steps one and two, but falters at step three, i.e., "[i]f a claimant's impairment is not sufficiently severe to equal or exceed a listed impairment, the ALJ must assess the claimant's residual functional capacity ('RFC')." Id. at 179.[3] Step four then requires the ALJ to assess whether, based on that RFC, the claimant can "perform past relevant work"; if so, the claimant does not qualify as disabled. Id. at 179-80. However, if the claimant establishes an inability to return to prior work, the analysis proceeds to the fifth step, whereupon the ALJ must decide "whether the claimant is able to perform other work considering both [the claimant's RFC] and [the claimant's] vocational capabilities (age, education, and past work

---

[3] RFC measures "the most a claimant can do despite [any] limitations." Hines, 453 F.3d at 562 (citing regulations requiring RFC to reflect claimant's "ability to do sustained work-related physical and mental activities in a work setting on a regular and continuing basis . . . [which] means 8 hours a day, for 5 days a week, or an equivalent work schedule" (internal emphasis and quotation marks omitted)). The RFC includes both a "physical exertional or strength limitation" that assesses the claimant's "ability to do sedentary, light, medium, heavy, or very heavy work," as well as "nonexertional limitations (mental, sensory, or skin impairments)." Hall, 658 F.2d at 265. "RFC is to be determined by the ALJ only after [the ALJ] considers all relevant evidence of a claimant's impairments and any related symptoms (*e.g.*, pain)." Hines, 453 F.3d at 562-63.

6

experience) to adjust to a new job." Hall, 658 F.2d at 264-65. If, at this step, the government cannot carry its "evidentiary burden of proving that [the claimant] remains able to work other jobs available in the community," the claimant qualifies as disabled. Hines, 453 F.3d at 567.[4]

## Assignments of Error

### 1. Listing 12.05C

Plaintiff first[5] argues that, at step three, "[t]he ALJ committed reversible error in not finding that [Plaintiff's] mild mental retardation meets or equals the requirements of Listing 12.05C." (Docket Entry 11 at 8-11.)[6] Defendant contends otherwise. (Docket Entry 17 at 10-15.) The Court should rule in Defendant's favor on this issue.

The mental retardation listing provides in relevant part:

> 12.05 *Mental retardation*: Mental retardation refers to significantly subaverage general intellectual functioning

---

[4] A claimant thus can establish disability under the Act via two paths through the SEP. The first path requires resolution of the questions at steps one, two, and three in the claimant's favor, whereas, on the second path, the claimant must prevail at steps one, two, four, and five. Some short-hand judicial characterizations of the SEP appear to gloss over the fact that an adverse finding against a claimant on step three does not terminate the analysis. See, e.g., Hunter, 993 F.2d at 35 ("If the ALJ finds that a claimant has not satisfied any step of the process, review does not proceed to the next step.").

[5] This Recommendation addresses the assignments of error in order of their place in the SEP (as analyzed by the ALJ (see Tr. 21-27)), the reverse of Plaintiff's discussion of them in his brief (see Docket Entry 11 at 5-11).

[6] Effective September 3, 2013, the Social Security Administration replaced the term "mental retardation" with "intellectual disability" in its Listing of Impairments. See Change in Terminology: "Mental Retardation" to "Intellectual Disability", 78 Fed. Reg. 46499-01 (Aug. 1, 2013). Because this case commenced prior to the change and the ALJ utilized the old terminology, this Recommendation will use the term "mental retardation."

7

with deficits in adaptive functioning initially manifested during the developmental period; i.e., the evidence demonstrates or supports onset of the impairment before age 22.

The required level of severity for this disorder is met when the requirements in A, B, C, or D are satisfied.

. . .

C. A valid verbal, performance, or full scale IQ of 60 through 70 and a physical or other mental impairment imposing an additional and significant work-related limitation of function . . . .

20 C.F.R. Pt. 404, Subpt. P, App. 1, § 12.05 (emphasis added).

Accordingly, a claimant can meet Listing 12.05C by establishing:

1) "a showing of deficits in adaptive functioning initially manifested during the developmental period; *i.e.*, the evidence demonstrates or supports onset of the impairment before age 22 (Prong 1)," Hancock v. Astrue, 667 F.3d 470, 473 (4th Cir. 2012) (internal quotation marks omitted);

2) "a valid verbal, performance, or full scale IQ of 60 through 70 (Prong 2)," id. (internal quotation marks omitted); and

3) "a physical or other mental impairment imposing an additional and significant work-related limitation of function (Prong 3)," id. (internal quotation marks omitted).

In this case, the ALJ indicated that the record reflected "a verbal IQ of 77, a performance IQ of 66 and a full scale IQ of 71 [on the Wechsler Adult Intelligence Scale], falling in the

borderline classification of intelligence." (Tr. 22.) Furthermore, the ALJ stated as follows:

> [Plaintiff's] [] IQ testing . . . does not meet the criteria for 12.05C, for full scale IQ testing. The medical evidence of record shows that [Plaintiff] graduated high school 100 in a class of 223, with a grade point average of almost 79. Over the years he has shown a degree of adaptive functioning, having worked in public jobs, maintaining a checking account and doing his own shopping. . . . When describing "adaptive functioning," as referenced in the introductory of listing 12.05, the undersigned notes that [sic] the [Diagnostic and Statistical Manual of Mental Disorders], stating, "Mental retardation is typified by 'significant limitations in adaptive functioning in at least two of the following skill areas: communication, self-care, home living, social/interpersonal skills, use of community resources, self-direction, functional academic skills, work, leisure, health, and safety.['"] The undersigned finds no evidence that [Plaintiff] would have significant limitations in any two areas, and thus, his adaptive functioning is such as to vitiate against meeting a 12.05 listing.

(Tr. 22.)

As Plaintiff points out (see Docket Entry 11 at 12), the ALJ apparently only considered the full scale IQ score for the purposes of Prong 2 (see Tr. 22 ("[Plaintiff's] was [sic] IQ testing as noted above, does not meet the criteria for 12.05C, for full scale IQ testing.")). However, "[i]n cases where more than one IQ is customarily derived from the test administered, e.g., where verbal, performance, and full scale IQs are provided in the Wechsler series, [the ALJ is to] use the lowest of these in conjunction with 12.05." 20 C.F.R. Pt. 404, Subpt. P, App. 1 § 12.00(D)(6)(c). The ALJ thus erred in determining that Plaintiff failed to meet Prong

9

2. Defendant nonetheless argues that "substantial evidence supports the ALJ's finding that Plaintiff failed to sustain his burden of establishing [deficits in adaptive functioning]." (Docket Entry 17 at 11.) Plaintiff only very briefly addressed that issue. (See Docket Entry 11 at 10 ("[Plaintiff's] poor performance in school and his lackluster performance on achievement testing is evidence demonstrating deficits in adaptive functioning prior to age 22." (citing Dixon v. Astrue, 2009 WL 4545262 (E.D.N.C. 2009)).)

As Defendant points out (Docket Entry 17 at 11), Plaintiff must show he suffers from deficits in adaptive functioning generally as well as deficiencies that manifested prior to age 22, Hancock, 667 F.3d at 475. Plaintiff made no argument as to the first. (See Docket Entry 11 at 8-11.) Moreover, substantial evidence supports the ALJ's conclusion that Plaintiff does not have deficits in adaptive functioning generally. In support of his determination, the ALJ noted that Plaintiff held a job with a single employer for eleven years, that he maintained a checking account, and that he did his own shopping. (Tr. 22; see also Tr. 33-34, 42-44 (Plaintiff's testimony that he can read a newspaper, helps with all chores around the house, maintained a checking account, paid bills, shops on his own, visits friends, plays cards).) Furthermore, the record indicates that Plaintiff reported no problems with personal care. (Tr. 193.)

Moreover, the record also supports a finding that Plaintiff did not suffer from adaptive functioning before age 22. Although Plaintiff cites his alleged "poor performance in school and his lackluster performance on achievement testing" (Docket Entry 11 at 10), the ALJ noted that Plaintiff "graduated from high school 100 in a class of 223, with a grade point average of almost 79" (Tr. 22; see also Tr. 185). In addition, Plaintiff's school records show that Plaintiff received, with only one exception, average grades in the 80s in his high school English and math classes. (Tr. 185.) Finally, the record indicates that Plaintiff is literate. (Tr. 33.) All of these considerations support the ALJ's determination that Plaintiff did not exhibit deficits in adaptive functioning prior to the age of 22. See, e.g., Wiggins v. Astrue, No. 5:11-CV-85-FL, 2012 WL 1016055, at *4 (E.D.N.C. Mar. 22, 2012) (unpublished) (recognizing, inter alia, plaintiff's literacy, graduation from high school, and not particularly poor grades in determining substantial evidence supported ALJ's finding that plaintiff did not suffer from deficits in adaptive functioning before 22).

In sum, the Court should hold that substantial evidence supports the ALJ's conclusion that Plaintiff does not meet Prong 1 of Listing 12.05C, rendering the ALJ's error concerning Prong 2 harmless.

## 2. RFC Assessment

Plaintiff next argues that the ALJ's RFC assessment fails to consider the impact of Plaintiff's mental impairment. (Docket Entry 11 at 7.) Although Plaintiff explains that "the ALJ must make findings regarding [Plaintiff's] ability to perform basic work-related activities," such as understanding, carrying out, and remembering instructions, respond appropriately to supervisors and coworkers, and deal with changes in work routine (id. at 7-8), Plaintiff does not indicate how the ALJ failed in this regard (id.). Moreover, the ALJ specifically discussed Plaintiff's mental impairments in his decision. (Tr. 24-26.) He noted that, although Plaintiff testified he had trouble getting along with others at his previous job, he was fired due to missing too much work for diabetes-related reasons, not for social problems. (Tr. 24.) Furthermore, the ALJ pointed out that, despite Plaintiff's history of schizophrenia and auditory hallucinations, Plaintiff kept his job as a dishwasher for 11 years. (Tr. 25.) The ALJ discussed in detail records from psychiatric visits in 2010 and 2011 (Tr. 25-26 (citing Tr. 315-18, 366-67, 384)) and summed up that evidence as follows:

> The whole of the longitudinal medical evidence of record established for the undersigned that [Plaintiff's] schizophrenia and his diabetes are controlled when [Plaintiff] is compliant with his medications and treatment. His global assessment of functioning is in the 55-65 range, indication [sic] no more than moderate symptoms. [Plaintiff] testified that he does not get along well with others, yet in more than one treatment

12

>     note [he] was documented to state he liked to go out,
>     either to bars or other places with people. At the time
>     [Plaintiff] was reportedly let go from his employment,
>     the medical evidence of record indicates he was not
>     taking his medications. [Plaintiff's] cognitive
>     functioning is in the borderline intellectual
>     functioning. He is able to read a newspaper, can figure
>     out and use public transportation, and did work for a
>     long time, eleven years, for one employer.
>
>     . . .
>
>     [Plaintiff's] testimony of being depressed for several
>     years is mentioned in older treatment records, but at
>     Carolina Behavioral Care he does not carry a diagnosis of
>     depressive disorder, has no symptoms of depression and
>     receives no medication for depression.

(Tr. 26.) Under these circumstances, the ALJ more than adequately considered Plaintiff's mental impairments in the RFC assessment.

## 3. Past Relevant Work Determination

Plaintiff finally contends that the ALJ "failed in his duty to develop the record" regarding Plaintiff's ability to perform his past work as a dishwasher. (Docket Entry 11 at 6-7.) "The decision as to whether [a] claimant retains the functional capacity to perform past work which has current relevance has far-reaching implications and must be developed and explained fully in the disability decision." Social Security Ruling 82-62, <u>Titles II and XVI: A Disability Claimant's Capacity to Do Past Relevant Work, In General</u> ("SSR 82-62"), 1982 WL 31386, at *3. As a result, SSR 82-62 demands that "every effort must be made to secure evidence that resolves the issue as clearly and explicitly as circumstances

permit." Id. In order to determine a claimant's capability regarding past relevant work, an adjudicator

> may use the services of vocational experts or vocational specialists . . . . A vocational expert or specialist may offer relevant evidence within his or her expertise or knowledge concerning the physical and mental demands of a claimant's past relevant work, either as the claimant actually performed it or as generally performed in the national economy. . . . In addition, a vocational expert or specialist may offer expert opinion testimony in response to a hypothetical question about whether a person with the physical and mental limitations imposed by the claimant's medical impairment(s) can meet the demands of the claimant's previous work, either as the claimant actually performed it or as generally performed in the national economy.

20 C.F.R. § 404.1560(b)(2).

In the instant case, the ALJ relied upon the testimony of Melissa Stewart, a vocational expert, for his decision that Plaintiff could perform his past relevant work as a dishwasher. (Tr. 27; see also Tr. 45-47.) The ALJ asked Stewart "to name jobs a hypothetical individual of the same age, educational background and employment history as [Plaintiff] could perform, given the particular [RFC]" the ALJ determined, i.e., someone who "could perform at all exertional levels of work . . . [,] should avoid concentrated exposure to hazards such as dangerous machinery and heights . . . [,] could perform simple, repetitive, routine tasks, with no requirement for public contact . . . [and who] was limited [to such tasks]." (Tr. 27; see also Tr. 46-47.) Stewart indicated that such a person could perform Plaintiff's past relevant work as a dishwasher. (Tr. 27; see also Tr. 47.) Based on this analysis,

14

and "[i]n comparing [Plaintiff's] [RFC] with the physical and mental demands of [his past relevant work]," the ALJ determined that Plaintiff "is able to perform [said work] as actually and generally performed." (Tr. 27.)

The ALJ thus did more than "simply state[] that [Plaintiff] could perform work as it is generally performed in the national economy," as Plaintiff claims (Docket Entry 11 at 7). Plaintiff presents no authority to suggest that the ALJ erred in primarily relying on the vocational expert's testimony and the Dictionary of Occupational Titles in ruling that Plaintiff could resume his past relevant work as a dishwasher. (See id. at 5-7.) The ALJ sufficiently developed the record by assessing Plaintiff's RFC through thorough analysis of the medical evidence and, through the testimony of the vocational expert, comparing that RFC to the demands of Plaintiff's past relevant work. (See Tr. 24-27.)

## CONCLUSION

The record establishes that Plaintiff failed to meet Listing 12.05C and the Court thus should conclude that substantial evidence supports the ALJ's decision. Furthermore, the ALJ sufficiently considered Plaintiff's mental impairments in the RFC assessment and the demands of his past relevant work as a dishwasher in his determination that Plaintiff could perform said work.

**IT IS THEREFORE RECOMMENDED** that the Commissioner's decision finding no disability be affirmed, that Plaintiff's Motion for

Judgment (Docket Entry 10) be denied, that Defendant's Motion for Judgment on the Pleadings (Docket Entry 16) be granted, and that this action be dismissed with prejudice.

                                                 /s/ L. Patrick Auld
                                                  **L. Patrick Auld**
                                    **United States Magistrate Judge**

August 5, 2014